UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMIRKHANOV YERKYN,

Plaintiff,

-against-

KLEBANOV ALEXANDR YAKOVLEVICH,
KAN SERGEY VLADIMIROVICH, and
NATIONAL SECURITY COMMITTEE OF
KAZAKHSTAN,

Defendants.

**MEMORANDUM AND ORDER**
23-CV-02399 (LDH) (CLP)

---

Amirkhanov Yerkyn ("Plaintiff") brings the instant action against Defendants Klebanov Alexandr Yakovlevich, Kan Sergey Vladimirovich ("Individual Defendants"), and the National Security Committee of Kazakhstan ("NSC"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.§1962(c) and 18 U.S.C. § 1964(d), the Alien Torts Statute ("ATS"),28 U.S.C.§ 1350), and state law claims of unjust enrichment and conversion.  Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(1)–(2), (5), to dismiss the complaint in its entirety.  Plaintiff moves, pursuant to Federal Rule of Civil Procedure 15(a) for leave to file a second amended complaint.

**PROCEDURAL HISTORY**

On March 28, 2023, Plaintiff filed a pro se complaint, (Compl., ECF No. 1), which he amended on April 21, 2023, (Am. Compl., ECF No. 6).  On November 17, 2023, Defendants filed a motion to dismiss the amended complaint.  (Def.'s Mot. to Dismiss, ECF No. 28.)

Shortly thereafter, Plaintiff obtained counsel.  Rather than respond to Defendants' motion to dismiss, Plaintiff requested leave to file an amended complaint.  (ECF Nos. 33, 34.)  On December 1, 2023, the Court set a briefing schedule to consider Plaintiff's motion for leave to file a second amended complaint.

## BACKGROUND[1]

Plaintiff Amirkhanov Yerkyn and his wife Artambayeva Yerkin,[2] along with Individual Defendants, were the sole shareholders of Central Asian Power-Energy Company ("CAPEC"), a Kazakhstan energy company.  (Proposed Second Amended Complaint ("Proposed SAC") ¶¶ 31, 33, ECF No. 44-3.)  Plaintiff and Individual Defendants were appointed as directors of CAPEC.  (*Id.* ¶ 36.)  In 2004, CAPEC acquired Eximbank, and Plaintiff served as the Chairman of the Management Board of Eximbank until 2009.  (*Id.* ¶¶ 41, 42.)  Eximbank maintained correspondent accounts at intermediary banks in New York City, which was chosen by Eximbank due to the New York Federal Reserve's role in global finance.  (*Id.* ¶¶ 43, 44.)

In 2009, Individual Defendants began transferring funds held in Eximbank's New York Federal Reserve account to Eximbank's correspondent accounts to pay back loans from various billionaires used to bribe public officials.  (*Id.* ¶¶ 51, 55.)  Once the funds were in the correspondent accounts, Individual Defendants moved the funds from these correspondent accounts to accounts owned by Forte Marketing LLC, a U.S. company, and Lodestar Holding

---

[1] The following facts are taken from the proposed Second Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

[2] Plaintiff's wife was not a plaintiff in the original complaint.  She is a proposed plaintiff in the Proposed SAC, but she will be referred to as Plaintiff's wife for ease of reference.

Limited, a company registered in Dubai and owned by Klebanov. (*Id.* ¶¶ 19, 51, 65.) Each of these transactions was disguised to look like a legitimate loan issued by Eximbank. (*Id.* ¶ 55.)

In July and August 2009, for example, Klebanov transferred $45.8 million to accounts controlled by him and by CAPEC in order to repay funds owed to Karim Massimov, the former prime minister of Kazakhstan who is currently serving a prison sentence for committing abuses of power. (*Id.* ¶ 21, 57–63.) Klebanov also transferred $25 million from Eximbank to a company controlled by him to repay a loan made to Forte Marketing LLC by Vasily Anisimov, a Russian businessman. (*Id.* ¶¶ 68–71.) This $25 million transfer was financed through a series of bonds, which began coming due in 2018. (*Id.* ¶¶ 71–74.)

By July 2017, Eximbank owed more than $116 million, and almost 80% of its loan portfolio was non-performing. (*Id.* ¶¶ 76–77.) It "became obvious" at that time that Eximbank was unable to fulfill its obligations to creditors. (*Id.* ¶ 76.) To cover up the embezzlement from Eximbank, Individual Defendants and Massimov, the head the of the NSC at the time, conspired to falsely incriminate Plaintiff and force him to assume responsibility for Eximbank's problems. (*Id.* ¶¶ 80–86.) On May 3, 2018, Plaintiff was arrested on false bribery charges, and for the next three months, he was incarcerated, interrogated, and "psychologically tortured". (*Id.* ¶¶ 88–89.) On July 23, 2018, NSC officials "forced" Plaintiff to sign agreements that transferred his shares in CAPEC to Individual Defendants, required him to assume all obligations of the now insolvent Eximbank in exchange for his release from custody, and required him to waive claims on loans and payments made for payments in favor of Lodestar Holding Limited. (*Id.* ¶¶ 99–110.) Individual Defendants also colluded with NSC to bring false criminal claims against Plaintiff's wife and coerced her into transferring her interest in CAPEC. (*Id.* ¶¶ 115–19.)

On August 27, 2018, by the decree of the National Bank of the Republic of Kazakhstan (NB

RK), the Interim Administration was appointed to oversee Eximbank and Individual Defendants

announced resigned from the Board of Directors of the Bank.  (*Id.* ¶ 78.)

## STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure provides that when a party seeks to

amend their pleading beyond the time period allowed for an amendment as a matter of course,

that party "may amend its pleading only with the opposing party's written consent or the court's

leave."  Fed. R. Civ. P. 15(a)(2).  Thus, absent the opposing party's consent, the Rule requires a

party seeking to amend its pleadings to obtain permission from the court before doing so.  *Id.*

Rule 15 expresses a strong presumption in favor of allowing amendment, providing that "[t]he

court should freely give leave when justice so requires."  *Id.*

The letter and spirit of Rule 15(a)(2) guide the courts in the exercise of their broad

discretion in deciding a motion to amend, and thus "motions to amend should generally be

denied in instances of futility, undue delay, bad faith or dilatory motive, or undue prejudice to

the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir.

2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ); a*ccord McCarthy v. Dun &

Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007).  The party opposing amendment bears

the burden of demonstrating good reason to deny the motion.  *Speedfit, LLC v. Woodway USA,

Inc.*, No. 13 CV 1276, 2015 WL 6143697, at * A motion to amend is properly denied where the

proposed amendment would be futile as a matter of law; futility is established where "the

proposed amended complaint would fail to state a claim on which relief could be granted."

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y.

2012) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.

4

2002) ). An amendment is also futile where the Court would lack jurisdiction to determine the proposed claim. *See* Fed. R. Civ. P. 12(b)(1); *Smith v. Everson*, No. 06 CV 0791, 2008 WL 818512, at *4 (E.D.N.Y. Mar. 21, 2008).

"The court applies the same standard as that for a motion to dismiss under Rule 12(b)(6) [or 12(b)(1)] when deciding whether to grant leave to amend." *Konrad v. Epley*, No. 12 CV 4021, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013); *accord Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d at 88. As such, a proposed amendment is futile if it does not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The proposed amendment must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In determining whether the proposed amended pleading would be futile, this Court must accept all well-pleaded allegations in the complaint as true and must construe the complaint liberally in the light most favorable to the plaintiff. *Konrad*, 2013 WL 6200009, at *20.

## DISCUSSION

Defendants argue that the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the court lacks subject matter jurisdiction. (Def.'s Mot. to Dismiss at 23–25, ECF No. 29.) When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). Plaintiff bears the burden of asserting subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Plaintiff's claimed basis for subject matter jurisdiction in the amended complaint is diversity of citizenship. (Am. Compl. at 3.) Diversity jurisdiction is properly invoked when a

plaintiff presents a claim "between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) (citing 28 U.S.C. § 1332).  However, "the fact that alien parties [are] present on both sides [will] destroy complete diversity." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980).  That is the case even where, as here, a permanent resident alien sues a non-resident alien. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 125 (2d Cir. 2020) ("We hold that 28 U.S.C. § 1332(a)(2) does not confer diversity jurisdiction where a permanent resident alien sues a non-resident alien.")

In the instant case, there is no dispute as to whether the jurisdictional amount in controversy has been met.  Rather, Defendants contend that Plaintiff cannot establish complete diversity because there are aliens on both sides of the action.  (Def.'s Mot. to Dismiss at 24.) The Court agrees.  Plaintiff is a Kazakh citizen living in New York.  (Am. Compl. at 2.)  Plaintiff brought this suit against Individual Defendants, who are also Kazakh citizens, and NSC, which is an agency of the Kazakh government.  (*Id.* at 2.)  Because Plaintiff and at least one defendant is an alien, the Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

In an effort to establish the Court's jurisdiction on alternative grounds, Plaintiff asserts two additional bases for the Court's subject matter jurisdiction in his proposed SAC: the Alien Tort Statue, 28 U.S.C. § 1350, and the civil RICO statute, 18 U.S.C. § 1964(c).  (Proposed SAC ¶ 23.)  However, neither statute grants the Court jurisdiction.

The Alien Tort Statute confers district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  Critically, "the presumption against extraterritoriality applies to claims under the ATS," and "relief for violations of the law of nations occurring outside the

United States is barred." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013).  Here, each allegation in support of Plaintiff's Alien Tort Statute claim in the proposed SAC stems from Plaintiff's alleged detention and in-custody treatment by the NSC—all of which occurred in Kazakhstan.  (*See* Proposed SAC ¶¶ 88–89, 99–110, 115–19.)  "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*."  *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013).

Plaintiff's reliance on the civil RICO statute fares no better. "[A] private RICO plaintiff . . . must allege and prove a domestic injury to its business or property" for a court to have jurisdiction over the claim.  *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 346 (2016). "[I]n assessing whether there is a domestic injury, courts should engage in a case-specific analysis that looks to the circumstances surrounding the injury." *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023).  And, "[i]f those circumstances sufficiently ground the injury in the United States, such that it is clear the injury arose domestically, then the plaintiff has alleged a domestic injury." *Id.* (finding a domestic injury where an alleged RICO scheme thwarted the plaintiff's rights granted to him by a judgment he obtained against the defendant in California).

In *Bilalov*, for example, the district court dismissed RICO claims that failed to allege a domestic injury.  2022 WL 4225968 at *1.  There, the plaintiff, a Russian citizen, sued a Russian state-affiliated bank, its Chairman Herman Gref, and its U.S. affiliate, alleging that they had conspired to seize his shares in a valuable company.  *Id.*  The plaintiff alleged that at meetings in Russia, Gref and an associate of his had threatened "violence, bodily harm, or death," if the plaintiff did not transfer all of his shares of the company to Gref and his affiliates. Id. at *2.  The plaintiff complied, and alleged that assets belonging to him were laundered through the United States.  The court dismissed the RICO claims, finding that the plaintiff could

not allege a domestic injury, as all injuries occurred in Russia. *Id.* Ultimately, the court reasoned that "a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Id.* (citing *Bascunan v. Elsaca*, 874 F.3d 806, 819 (2d Cir. 2017)). So too here. Plaintiff alleges that Individual Defendants, in concert with the NSC and Massimov, forced him and his wife to transfer their shares of CAPEC in exchange for the debt obligations of Eximbank, two companies located in Kazakhstan, and to relinquish his right to bring a future suit related to that debt obligation. (*Id.* ¶¶ 115–19.) Plaintiff was in Kazakhstan when the shares were transferred. (*Id.*) These facts support the inference that Plaintiff suffered a foreign rather than domestic injury. And, as the court in *Bilav* found, Plaintiff's allegations that Individual Defendants committed acts of fraud in the United States to conceal their scheme do not transform Plaintiff's injury a domestic one.[3] *Cf. Antares Aircraft, L.P.*, 999 F.2d at 36 (holding that "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone," does not constitute a "direct effect in the United States" for purposes of FSIA commercial activity exception).

---

[3] Plaintiff also argues that 18 U.S.C § 201 prohibits the bribery of foreign officials establishes the Court's jurisdiction over his RICO claims because violations of § 201 are "subject to extraterritorial federal jurisdiction." (Pl.'s Reply at 14.) Thus, Plaintiff argues, the Court has jurisdiction over Defendants "since they are alleged to be involved in the conspiracy, bribery, and embezzlement." (*Id.*) Even if § 201 has extraterritorial effect, the Supreme Court has already foreclosed Plaintiff's argument. The question whether a civil RICO claim alleges a domestic injury does not turn on whether the underlying predicate statutes alleged to have been violated have extraterritorial application. *RJR Nabisco, Inc.*, 579 U.S. at 350 (rejecting the argument that "a RICO plaintiff may sue for foreign injury that was caused by the violation of a predicate statute that applies extraterritorially," because "[i]t is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries"). Instead, "Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property," *id.* at 354, which is "a context-specific inquiry that turns largely on the particular facts alleged in a complaint." *Yegiazaryan*, 599 U.S. at 543.

Plaintiff's claims against Defendants in the proposed SAC are therefore futile.  Because the Court lacks subject matter jurisdiction, it must dismiss Plaintiff's complaint without considering Defendants' motions to dismiss for failure to state a claim.  *See Rhulen Agency, Inc.*, 896 F.2d at 678 ("[I]f [a court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend his First Amened Complaint is DENIED.  Defendants' motions to dismiss Plaintiff's First Amended Complaint are GRANTED without prejudice to renew.

SO ORDERED.


Dated: Brooklyn, New York                   /s/ LDH
      September 30, 2024                   LASHANN DEARCY HALL
                                    United States District Judge